IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| PAUL WINDOM, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 5:10-CV-407 (MTT) |
| | ) |
| NORFOLK SOUTHERN RAILWAY COMPANY, | ) |
| | ) |
| Defendant. | ) |

## ORDER

This matter is before the Court on the Defendant's Motion for Partial Summary Judgment. (Doc. 37). The Plaintiff seeks to hold the Defendant liable, pursuant to the Federal Employers' Liability Act, for injuries allegedly suffered in the course of his employment. The Plaintiff alleges that the Defendant violated the Safety Appliance Act (SAA) because the "high-rail vehicle" (a vehicle that can operate on both roadways and railroad tracks) the Plaintiff was using at the time he was injured did not comply with the SAA sill step requirements. The Defendant argues that the SAA does not apply to high-rail vehicles that are being operated on the roadway. For the reasons discussed below, the Motion is **DENIED**. (Doc. 37).

### I.  PROCEDURAL AND FACTUAL HISTORY

The relevant facts are not in dispute. At the time of the incident, the Plaintiff was employed by Defendant Norfolk Southern Railway Company. As part of his job, the Plaintiff drove a welding truck. (Doc. 37-1 at 1). This welding truck is considered a high-rail vehicle because it can be operated both on the roadway and on Norfolk

Southern's railroad line. At the time of the Plaintiff's injury, he was parked at a gas station in Vienna, Georgia. The Plaintiff alleges that he injured himself while descending from the welding truck. Specifically, he asserts that a step on the truck was bent causing him to lose his footing.

After the dispositive motions deadline expired, the Defendant realized that the Plaintiff intended to combat a contributory negligence defense by alleging that the Defendant's vehicle was not compliant with the SAA, and, thus, the Defendant was strictly liable for the Plaintiff's injuries. The Court permitted the Defendant to move for partial summary judgment on the sole issue of whether the SAA was applicable to the high-rail vehicle operated by the Plaintiff at the time of the injury.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment must be granted if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material facts and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "A factual dispute is genuine only if 'a reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991)). Further, the burden rests with the moving party to prove that no genuine issue of material fact exists. *Info Sys. & Networks Corp.*, 281 F.3d at 1224. The district court must "view all evidence in the light most favorable to the nonmoving party, and resolve all reasonable doubts about the facts in its favor." *Id*.

## III. DISCUSSION

### A. The Federal Employers' Liability Act and Federal Safety Appliance Act

FELA provides, in relevant part, that:

> [e]very common carrier by railroad … shall be liable in damages to any person suffering injury while he is employed by such carrier in commerce … for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery … or other equipment.

45 U.S.C. § 51. FELA was passed as "a response to the special needs of railroad workers who are daily exposed to the risks inherent in railroad work and are helpless to provide adequately for their own safety." *Sinkler v. Mo. Pac. R.R. Co.*, 356 U.S. 326, 329 (1958) (internal citations omitted). However, FELA is not a strict liability statute, and in order for a plaintiff to prevail on a claim under FELA, he must show that employer negligence played some part in producing the injury for which damages are sought. *Tootle v. CSX Transp., Inc.*, 746 F. Supp. 2d, 1333, 1337 (S.D. Ga. 2010). Thus, to recover under FELA, the injured railroad employee must show that (1) he was injured within the scope of his employment for the railroad, (2) his employment was in furtherance of the railroad's business, (3) the employer was negligent, and (4) the employer's negligence "played some part in causing the injury" for which he seeks compensation. *Marshall v. Grand Trunk Western Railroad Co.*, 2011 WL 4344305, *8 (W.D. Mich.).

The third element—negligence—can be established if a plaintiff proves that the railroad company violated the SAA. The SAA imposes an absolute duty on railroads, and a violation of an SAA regulation is negligence per se. *Id.* at *9; *see also Lilly v.*

*Grant Trunk Western Railroad Co.*, 317 U.S. 481 (1943).  Thus, a violation of the SAA does not itself confer a right of action on a plaintiff; however, it will provide the basis of a claim if a plaintiff can prove the violation.  *Id.* at *8 (citing *Beissel v. Pittsburg & Lake Erie Railroad Co.*, 801 F.2d 143, 145 (3d Cir. 1986)).

The relevant SAA provision provides:

> Except as provided in subsection (c) of this section … a railroad carrier may use or allow to be used on any of its railroad lines—(1) a vehicle only if it is equipped with—… (B) **secure sill steps** and efficient hand brakes…"

49 U.S.C. § 20302 (a)(B) (emphasis added).  The Defendant does not contest the Plaintiff's factual allegation that the record contains sufficient evidence of a violation of the SAA sill step requirements.  Instead, the Defendant contends that the SAA is not available to the Plaintiff because the welding truck was not being operated on a railroad line at the time of the incident.

**B.    The SAA's Applicability**

The SAA applies to vehicles that "a railroad carrier may use or allowed to be used on any of its railroad lines."  49 U.S.C. § 20302(a).  The Defendant asserts that the language "its railroad lines" limits the application of the SAA to instances where high-rail vehicles, in this case welding trucks, are operated on the actual railway, rather than a roadway.  The Plaintiff cites *Beissel v. Pittsburgh & Lake Erie Railroad Co.*, 801 F.2d 143 (3d Cir. 1986) to support his contention that the SAA does apply to the high-rail vehicle while used on railways.  (Doc. 41).

The facts in *Beissel* are essentially identical to the facts here.  The Third Circuit held that a high-rail vehicle being operated on a roadway, rather than railroad tracks, is

-4-

within the scope of the SAA and subject to the secure still steps requirement. *Beissel*, 801 F.2d at 147.  However, the Defendant argues (1) that *Beissel* is not binding on this Court and (2) that, even if the Court finds *Beissel* persuasive, the Third Circuit was interpreting a previous version of the SAA.  (Doc. 37-2 at 5-8).  The version of the SAA in effect at the time of the Third Circuit's ruling provided that the SAA applies to vehicles "used on its line," rather than the current version of the SAA that provides that the statute applies to vehicles "used on any of its railroad lines."  *Id.* at 145; 49 U.S.C. § 20302(a).

Obviously, *Beissel* is not binding precedent on the Eleventh Circuit.  However, as discussed below, the Court finds its reasoning persuasive.  The Court will first address the argument that the amendment of the SAA effectively abrogates *Beissel*.

The Defendant cites no case law nor legislative history to support its abrogation argument, but simply alleges that "[t]he inclusion of the word 'railroad' before 'lines' in the current version of the statute removes any ambiguity regarding when the SAA applies."  (Doc. 37-2 at 6).  The legislative history of the SAA amendments does not support the Defendant's assertion.  The "Revision Notes and Legislative Reports" regarding the 1994 SAA changes show that the change from "on its line" to "on any of its railroad lines" was one of several technical changes to the SAA for consistency and clarity purposes in the revised title.  H.R. Rep. 103-180 (1993), *reprinted in* 1994 U.S.C.C.A.N. 818, 1993 WL 287624.  Nothing in the legislative history supports the Defendant's contention that the minimal change to "on any of its railroad lines" was intended to be substantive and overturn Circuit cases that had interpreted the previous language, "on its line," to apply to high-rail vehicles, regardless of where they were

being used.  In fact, the House Report states that the general purpose of the amendments "is to restate in comprehensive form, **without substantive change**…[,] and to make **other technical improvements**."  *Id.* (emphasis added).  The Report goes on to state:

> Substantive change not made.–As in other codification bills enacting titles of the United States Code into positive law, this bill makes no substantive change in the law. It is sometimes feared that mere changes in terminology and style will result in changes in substance or impair the precedent value of earlier judicial decisions and other interpretations. This fear might have some weight if this were the usual kind of amendatory legislation when it can be inferred that a change of language is intended to change substance. In a codification law, however, the courts uphold the contrary presumption: the law is intended to remain substantively unchanged.

*Id.*  Thus, nothing in the legislative history indicates that the Third Circuit's interpretation of the previous version of the SAA should be discounted.

The Court now turns to *Beissel*'s reasoning.  The Third Circuit first noted that the Supreme Court had held high-rail vehicles, generally, are subject to the provisions of the SAA.  *Beissel*, 801 F.2d at 146 (citing *Baltimore & Ohio Railway Company v. Jackson*, 353 U.S. 325, 328 (1957)).  The Third Circuit could find "no reasonable justification for excluding high-rail vehicles" operated on the roadway at the time of the incident from the SAA sill steps requirements.  *Beissel*, 801 F.2d at 147.  Further, the court in *Beissel* reasoned that "use of a car on a carrier's 'line' need not be limited to the carrier's railroad track.  Where use of its cars on the highway is an integral part of a railroad carrier's operation, the employer may not escape liability merely because an employee is unfortunate enough to be injured by a defective sill step while the vehicle is

on the highway and not on a rail." *Id.*   Because the high-rail vehicle "was being used in the regular course of business, on both rail and highway[,]  the defendant had equipped the vehicle for rail and provided required sill steps.  So long as it continued to use the multi-purpose vehicle in this dual capacity, it was required…by the Safety Appliance Act[] to maintain a secure step."  *Id.* at 148.

Although the SAA requires secure sill steps, the Defendant, citing 49 C.F.R. § 231.25(c), notes that sill steps are only required when the bottom of a "track motorcar is more than 24 inches above top of rail."  The Defendant argues the regulation buttresses the argument that the SAA only applies when the vehicle is used on railroad lines. (Doc. 37-2 at 5).  While it seems that sill steps are only required when the bottom of a vehicle is more than 24 inches above railroad tracks, the fact remains that the SAA requires **secure** sill steps.  In other words, once installed, the SAA requires that the steps be secure.  Again, when a faulty sill step causes an injury, there is no less a violation of the SAA simply because the injury occurred when the vehicle was parked in a parking lot.

The Court has found no Eleventh Circuit case law on this issue.  Further, the Defendant cites no cases, Eleventh Circuit or otherwise, to support its assertion that "on any of its railroad lines" should be interpreted to allow for a railroad company to only comply with the SAA sill steps regulations when a high-rail vehicle is being operated on a railway.  Thus, although the Court is not bound by the Third Circuit's holding in *Beissel*, it finds the reasoning persuasive.

Here, there is no dispute that the welding truck is a high-rail vehicle that can be operated both on the railway and on the roadway.   Therefore, the vehicle is subject to

-8-

the SAA sill steps regulations, regardless whether the injury occurred while the vehicle was in use on a railway or on a roadway.  This Court, like the Third Circuit in *Beissel*, finds no rational reason for requiring the Defendant to comply with SAA regulations while the vehicle is being operated on a railway, but to allow noncompliance with the SAA while the exact same vehicle is being operated on a roadway.  Therefore, the Defendant's Motion is **DENIED**, and the Plaintiff's evidence of an SAA violation can be presented at trial.

      **SO ORDERED**, this the 28th day of June, 2012.


                                                S/ Marc T. Treadwell
                                                MARC T. TREADWELL, JUDGE
                                                UNITED STATES DISTRICT COURT