**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | | |
|---|---|---|
| **PAUL WINDOM,** | **:** | |
| | **:** | |
| **Plaintiff,** | **:** | |
| | **:** | |
| **vs.** | **:** | **CIVIL ACTION** |
| | **:** | **NO. 5:10-cv-407** |
| **NORFOLK SOUTHERN RAILWAY** | **:** | |
| **COMPANY,** | **:** | |
| | **:** | |
| **Defendant.** | **:** | |

**MOTION TO SATISFY JUDGMENT ON JURY VERDICT ENTERED
AUGUST 3, 2012, AND TO STAY ISSUANCE OF WRIT OF
EXECUTION AND FOR COURT TO ORDER EXPEDITED BRIEFING AND
INCORPORATED MEMORANDUM OF LAW IN SUPPORT OF SAME**

**COMES NOW**, Norfolk Southern Railway Company, by and through its undersigned

counsel of record, and hereby submits that this Court should determine that the Judgment entered

August 3, 2012, on the jury verdict should be satisfied without additional payments to Plaintiff.

Defendant brings this Motion pursuant to F.R.C.P. 60(b)(5) and (6) and 62(b)(4) and seek a

ruling from this Court that the Judgment be satisfied.

**I.     BACKGROUND FACTS SUPPORTING JUDGMENT SATISFACTION BY
        COURT AND ARGUMENT IN SUPPORT OF SAME**

Plaintiff filed his personal injury lawsuit against his employer, Defendant Norfolk

Southern Railway Company, on October 28, 2010.  The case proceeded to trial beginning July

30, 2012, and a verdict was entered in favor of Plaintiff in the amount of $200,000.00, reflecting

damages awarded for *past* and *future* wage loss in the amount specified in the verdict form.  The

award of $200,000.00 was reduced by Plaintiff's contributory negligence, resulting in a net award

of $20,000.00.  The Court's Judgment dated August 3, 2012, awarded $20,000.00 to Plaintiff,

post judgment interest, and costs.  The Judgment with costs is $24,832.90, plus interest at the rate of 0.17%.  Defendant submits that the amount(s) it may legally offset from the Judgment demand satisfaction before the accrual of additional interest.

## A.      DEDUCTIONS FOR TIER I AND II AND MEDICARE CONTRIBUTIONS AWARDED TO PLAINTIFF BY JURY

Plaintiff and Defendant have certain withholding obligations based upon the jury award of past wage loss of $10,000.00.  Defendant submits that until such time as Plaintiff was advised he forfeited his seniority with Defendant, any jury award for past lost wages is subject to withholding for Tier I and Tier II benefits[1].  Likewise, Defendant must also pay its portion/contribution to Tier I and Tier II on behalf of Plaintiff.  Plaintiff and Defendant must also make their contributions to Medicare.  Defendant calculates that Plaintiff's contributions for Tier I and Tier II and Medicare are as follows:

Tier I: 4.20% of  $10,000.00 = $420.00;

Tier II: 3.90% of $10,000.00 = $390.00;

Medicare: 1.45% of $10,000.00 = $145.00;

**Tier I, Tier II, and Medicare Contribution Owed by Plaintiff = $955.00**

The Plaintiff has implied that since he is no longer an employee, he is not subject to Tier I and Tier II taxes and/or Medicare withholdings.  However, he remained an employee until December 2, 2010, when he effectively forfeited his seniority rights.  Plaintiff was awarded past wage loss and therefore the amount is subject to withholdings pursuant to the applicable law and agency regulations.

---

[1] Tier I and Tier II are not federal or state income taxes.

The purpose of this brief is to advise the Court and counsel of federal legal requirements for withholding employee owed Railroad Retirement Board (hereinafter the "RRB") and Medicare contributions from the satisfaction of any judgment for Plaintiff, the impact that an award for past and future wage loss will have on Plaintiff's Railroad Retirement Disability Annuity payments (the "Annuity"), and the well-established rule in FELA cases that a personal injury award is not subject to federal or state income tax. *Norfolk & W. Ry. Co. v. Liepelt,* 444 U.S. 490 (1980).

If Plaintiff receives a monthly Annuity payment from the RRB, it will be based in part, on prior earnings and years in service. With certain exceptions noted below, courts have generally held that the receipt of the Annuity is not admissible at trial. However, in the event of a verdict for Plaintiff, federal law treats the wage loss portion of the judgment as creditable service income for Railroad Retirement purposes. As a result, Defendant ***must*** report satisfaction of the judgment to the RRB and allocate the recovery of wage loss to the past period of time the employee was off work due to his alleged injury <u>and</u> to future months when appropriate. In this case, future months need not be considered, as Plaintiff forfeited his seniority rights. Defendant must also withhold Plaintiff's applicable RRB and Medicare tax obligations due on Plaintiff's judgment and when satisfied, remit the taxes directly to the U.S. Treasury[2].

In addition, federal law does not permit Plaintiff to receive Annuity payments and also receive an award for wage loss for the same period of time. This is because federal law provides that the RRB disability benefits previously received are subject to recoupment by the RRB, and future payments are subject to suspension once a judgment is satisfied, which includes an award

---

[2] NSRC is also required to pay its own share of taxes due on those amounts. The NSRC share is not an offset of any award Plaintiff receives.

covering past or future wage loss.  It is important to note that, despite these regulations, an award to Plaintiff is not subject to federal or state ***income*** taxes.

The railroad and its employees are subject to the Railroad Retirement Act and are required to pay Railroad Retirement taxes in lieu of Social Security taxes.  45 U.S.C. § 231 *et seq.*;  *Hance v. Norfolk S. Ry.*, 571 F.3d 511, 522 (6th Cir. 2009).  Although the tax rates have changed over the period of Plaintiff's employment, NSRC has consistently contributed the majority of the funding for Plaintiff's Annuity.  At current rates, the employee pays "Tier 1" taxes of 4.2% of an employee's compensation up to $110,100 and "Tier II" taxes of 3.9% of compensation up to $81,900.  The employer pays 6.2% of an employee's income up to $110,100 for Tier I and another 12.1% of compensation up to $81,900 for Tier II.  Additionally, the railroad and its employees each are required to pay 1.45% in Medicare taxes on the employee's earnings with no cap.  Finally, the employer pays Railroad Unemployment Insurance Act (RUIA) taxes[3], which solely fund sickness benefits paid to Plaintiff for up to six months following injury. RUIA, 45 U.S.C. §351 [*et seq.*]; 20 CFR Part 345.

Satisfaction of a judgment based in any part on evidence of lost wages triggers not only the obligation of the railroad to remit the appropriate amount of RRB taxes to the U.S. Treasury for both the railroad and the Plaintiff, it also may trigger action by the RRB to recover prior

---

[3]  The amount of this tax is a percentage of Plaintiff's income and is adjusted from time to time based on the employer's "experience," i.e., the amount of sickness benefits paid to the employees of that employer.  The tax is in the range of 2.15% to 3.15%.

Annuity payments and suspend future Annuity payments[4].  As the RRB guide, <u>Pay For Time Lost</u>

<u>From Regular Railroad Employment</u>, Form IB-4 (06-96)[5], explains:

> The intent behind the pay for time lost concept is to treat an
> employee as if he or she had actually performed compensated
> service during an identifiable period of time.  The effect of pay for
> time lost upon eligibility and benefits under the RRA and the
> RUIA is identical to the effect of regular earnings for which service
> and compensation credit are received . . . The most common type
> of pay for time lost arises out of "on the job" personal injury . . .
> awards or settlements . . . .

The RRB guide goes on to conclude on p. 12[6]:

> [b]ecause pay for the time lost is effectively the same as
> compensated service for active employment, an employee is not
> entitled to an annuity under the Railroad Retirement Act with
> respect to any months to which pay for time lost has been
> allocated.  For this reason, a pay for time lost allocation to an
> employee who is already receiving an annuity may cause an
> annuity overpayment.

The RRB consistently follows these guidelines.  In RRB Legal Opinion, L-2010-04[7], the

Board has stated that satisfaction of FELA judgments which include compensation for past

and/or future wage loss must be reported to the Board and allocated to the period of time the

employee missed work <u>and</u> to future months.  Additionally, the employer-railroad must withhold

applicable Tier 1 and Tier II taxes and the employee's Medicare tax obligations from payment of

any judgment.  *See also,* <u>RRB Pay For Time Lost From Regular Railroad Employment</u>, Form IB-

4 (06-96), at 5 ("Pay for time lost is considered compensation under the Railroad Retirement Tax

---

[4] Defendant does not believe that Plaintiff is receiving an annuity payment from the RRB at present.  However, the Agency (RRB) commentary is persuasive in outlining Defendant's contentions in regard to the obligations imposed upon it and Plaintiff to pay Tier I, II, and Medicare
[5] Http://www.rrb.gov/forms/pands/misc/ib4.asp#
[6] *Id*. pg. 12
[7] Http://www.rrb.gov/pdf/blaw/L-2010-04.pdf

Act.  Thus, an employer is required to withhold and pay the employment taxes due on pay for

time lost.")[8].

Legal Opinion L-87-91, specifically dealt with an FELA jury award.  It states that Section

1(h)(2) of the RRA (45 U.S.C. § 231(h)(2)) provides that:

> [A]n employee shall be deemed to be paid 'for time lost' the
> amount that he is paid by an employer with respect to an
> identifiable period of absence from active service for the employer,
> including absence on account of personal injury. . . .[i]f a payment
> is made by an employer with respect to a personal injury and
> includes pay for time lost, the total payment should be deemed to
> be paid for time lost unless there is a specific apportionment to
> factors other than pay for time lost.

*See also*, RRB Legal Opinion L-84-22 ("The employee will forfeit any annuity which he or she

received in the month in regard to which the back pay is credited.  The Board will then recoup

the overpaid annuities pursuant to 45 U.S.C. § 231(a), through case repayment or by withholding

future annuities payable.").  As a matter of law, claimants are not entitled to receive both lost

wages and disability annuity for the same period of time that is included in a jury award which

includes compensation for time lost.

In the event that Plaintiff obtains a jury award based in part on evidence of loss of

earnings, the award is "creditable compensation" or compensated service which must be

allocated to those months Plaintiff was off work[9].  RRB Legal Opinions L-2005-03 and L-92-18;

*see also,* 45 U.S.C. § 351(i)(1).

Defendant should receive a credit against the judgment amount of $955.00.

**B.      RAILROAD RETIREMENT BOARD REIMBURSEMENT**

The Judgment should be deemed satisfied to the extent reimbursement to the Railroad

---

[8] Http://www.rrb.gov/forms/pands/misc/ib4.asp#
[9] In this case, August 12, 2010, until seniority forfeiture on December 2, 2010.

Retirement Board is required by law. Defendant submits and does not believe Plaintiff disputes

that the Railroad Retirement Board retains a statutory right of reimbursement in the amount of

$13,002.00 for benefits received during his alleged disability pursuant to the Railroad

Unemployment Insurance Act (hereinafter referred to as the "RUIA"). In support of Defendant's

argument, Defendant attaches as Exhibit "A" the August 6, 2012, letter of Plaintiff to the U.S.

Railroad Retirement Board, which seeks a ruling from the Board that it waive its right to

statutory reimbursement for benefits paid. Clearly, Plaintiff recognizes the RRB statutory

reimbursement rights, or this letter would not have been sent on his behalf. The RRB refused to

waive its right of reimbursement pursuant to the RUIA. However, the RRB did state, per their

correspondence dated August 13, 2012, that they would reduce their right of reimbursement to

$6,233.23 (see August 13, 2012, letter from RRB attached as Exhibit "B"). Notwithstanding its

statutory rights, the RRB has agreed to accept a lessor sum of the amount paid in benefits for the

reasons expressed in Exhibit "B." Therefore, Defendant should receive a credit against the

judgment in the amount of $6,233.23.

### C.    AETNA SICKNESS BENEFIT OFFSET

It is undisputed that the Plaintiff is a member of the Brotherhood of Maintenance of Way

Workers, which is a labor union that entered an agreement with Norfolk Southern Railway

Company that afforded him certain benefits, rights, and privileges. One of those rights was to

receive supplemental sickness benefits in the event of an alleged disability that precluded him

from working in amounts as provided in the Supplemental Sickness Benefits Plan (hereinafter

referred to as the "Plan") covering railroad shop craft employees. Plaintiff received benefits in

the amount of $19,868.00. (See Exhibit "C" attached) A copy of the Plan pursuant to which

these benefits were paid dated July 1, 2006, is attached hereto as Exhibit "D." The Foreword

provides information about the Plan, including that the Plan is self-funded and not insured. (Exhibit "D," pg. "I")   The Plaintiff was entitled to receive benefits for his alleged disability pursuant to the Plan that totaled $19,868.80.   Defendant does not believe that Plaintiff disputes that he received benefits pursuant to the Plan; however, Plaintiff disputes that they may be withheld from a payment made in satisfaction of the Judgment.   Provided however, the Aetna Plan specifically provides that if benefits are paid under the Plan, that the benefit payments will be deducted from *any* payment made in any case involving *a claim* for loss of wages and in which the employer or a third party may be liable for the injury.   Noteworthy, the jury verdict provided that Plaintiff was entitled to past lost wages and future lost wages.   The jury determined that Defendant was liable for these sums, and now per the "Plan" provisions they must withhold/deduct from the payment Defendant will make to Plaintiff.

Detailed information supporting Defendant's claims that it *may deduct* from any payments made those made previously pursuant to the self-funded Plan are found in Section V of Exhibit D titled "*Additional Information.*"   Specifically, the information about liability cases provides as follows:

> ...This Plan has been established and maintained issued in fulfillment of certain collective bargaining agreements.  The agreement contains the following provisions: In cases of a disability for which the employee may have a right of recovery against the employing Railroad...benefits will be paid under this Plan pending a final resolution of the matter so that the employee will not be exclusively dependent upon his sickness benefits under the Railroad Unemployment Insurance Act.....*According, benefits paid under this Plan will be offset against any right of recovery for loss of wages the employee may have against the employing railroad;* the insuring agent [now the Plan] will be subrogated to any right of recovery for loss of wages the employee may have against any party other than the employing Railroad; ...

> Thus, if benefits are paid under this Plan, *the benefits will be deducted from any payment made in any case involving a claim for loss of wages and in which the employer or a third party may be liable for the injury*....

(Exhibit "D" pg. 18; emphasis added)

The Plaintiff, by and through his membership in the Brotherhood of Maintenance of Way Employees, which is afforded the benefits of the Plan, previously agreed, by and through his membership, that benefits previously received from him under the Plan, may be deducted from any payment made in any case involving a claim for loss of wages.  It could not be more clear in this case that Plaintiff recovered for wage loss.  The jury awarded a sum of $200,000.00 for wage loss reduced accordingly for Plaintiff's contributory negligence.  The Plaintiff received benefits pursuant to the Plan of $19,868.80.  In accordance with the terms of the Plan, the Defendant should be entitled to deduct $19,868.80 from any payment made to Plaintiff in satisfaction of the judgment.

## II.   CONCLUSION

The Defendant submits it should be allowed to reduce Plaintiff's judgment for: (1) Tier I and Tier II deductions and also Medicare totaling $955.00; (2) $6,223.23 to satisfy the Railroad Retirement Board reimbursement; and (3) repayment of the Aetna benefits received which total $19,868.00  These sums totaling $27,046.23 exceed the Judgment amount and demand satisfaction of said Judgment.  The Defendant further requests that the Court, pursuant to F.R.C.P. 62(b)(4) stay the issuance of a writ of execution.

**WHEREFORE**, this Court should direct the Clerk to satisfy the Judgment pursuant to F.R.C.P. 60(b)(5) and (6) and indicate the same in its records.

This 4th day of September, 2012.

/s/ Mark E. Toth
Mark E. Toth
Ga. Bar Number: 714727

/s/ Amanda M. Morris
Amanda M. Morris
Ga. Bar No. 141676

/s/ Walker S. Stewart
Walker S. Stewart
Ga. Bar No. 221715
Attorneys for Defendant Norfolk Southern Railway
Company
Hall, Bloch, Garland & Meyer, LLP
577 Mulberry Street, Suite 1500
P. O. Box 5088
Macon, GA 31208-5088
Telephone: (478) 745-1625
Facsimile: (478) 741-8822
Email: amandamorris@hbgm.com
        marktoth@hbgm.com
        walkerstewart@hbgm.com

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that I have this date served a copy of the foregoing **MOTION TO SATISFY JUDGMENT ON JURY VERDICT ENTERED AUGUST 3, 2012 AND TO STAY ISSUANCE OF WRIT OF EXECUTION AND EXPEDITED BRIEFING AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT OF SAME** upon plaintiff's counsel of record by depositing a copy of same in the United States Mail with adequate postage thereon to insure delivery as follows:

Andrew Lampros, Esq.
COOK, HALL & LAMPROS, LLP
1230 Peachtree Street, NE, Suite 3700
Atlanta, Georgia 30309

This 4th day of September, 2012.

/s/ Mark E. Toth
Mark E. Toth
Ga. Bar Number: 714727
Attorney for Norfolk Southern Railway Company