```
            IN THE UNITED STATES DISTRICT COURT

              FOR THE MIDDLE DISTRICT OF GEORGIA

                        MACON DIVISION

                   _____


    PAUL WINDOM,    PLAINTIFF,      :
                                    : Case No. 5:10-CV-407(MTT)
    v.                              :
                                    :    July 30, 2012
                                    :    Macon, Georgia
    NORFOLK SOUTHERN RAILWAY        :
    COMPANY,                        :    Ex Parte Hearing
                    DEFENDANT.      :
    _____

                        CIVIL JURY TRIAL

            BEFORE THE HONORABLE MARC T. TREADWELL,
            UNITED STATES DISTRICT JUDGE, PRESIDING

    APPEARANCES:

    FOR THE PLAINTIFF:      PETER ANDREW LAMPROS
                            PATRICK JOSEPH HANNON
                            COOK, HALL, AND LAMPROS, LLP
                            1230 PEACHTREE ST NE STE 3700
                            ATLANTA, GA 30309
```

_____

*SALLY L. GRAY, CCR, RPR, USCR*
*P.O. BOX 875*
*MACON, GA 31202-0875*

*(478-752-3497)*

|    |    |
|----|----|
| 1  | **P R O C E E D I N G S** |
| 2  | **July 30, 2012**                                       *(In Chambers)* |
| 3  | **THE COURT:**  Friday afternoon I denied the plaintiff's |
| 4  | motion to quash the subpoena of Tom Birmingham who is a claim |
| 5  | adjustor based on Mr. Lampros's representations that his |
| 6  | examination of Mr. Birmingham would not intrude on his |
| 7  | privileged activity or his work product as a claims agent for |
| 8  | the railroad.  And now Mr. Lampros is going to give me a |
| 9  | general idea about what he wants to do. |
| 10 | **MR. LAMPROS:**  Yes, Your Honor.  I think it was |
| 11 | defendant's motion to quash. |
| 12 | **THE COURT:**  Okay. |
| 13 | **MR. LAMPROS:**  Mr. Birmingham -- well, first of all, the |
| 14 | verification of interrogatories were verified by someone other |
| 15 | than Mr. Birmingham.  We talked about that.  But I do think as |
| 16 | Mr. Birmingham as an officer or the agent I should be able to |
| 17 | cross examine him. |
| 18 | **THE COURT:**  Is an officer? |
| 19 | **MR. LAMPROS:**  He is.  He is management of the agent. |
| 20 | He exercises his discretion on a daily basis on behalf of |
| 21 | railroad. |
| 22 | **THE COURT:**  Well, you mean officer in the sense of the |
| 23 | duties of his position or is he an officer? |
| 24 | **MR. LAMPROS:**  He's not a vice president, but he is -- |
| 25 | in terms of his position under the law, he does have the |

1   authority to bind the company.  And that is one area that I
2   will delve into with him potentially.  More importantly, they
3   have made an very big issue out of mitigation of damages and
4   alleged failure to mitigate.
5       The railroad has a vocational rehabilitation department
6   that is coordinated through the claims department.  They have
7   made absolutely no effort to contact Mr. Windom in an effort
8   to help him get back to work in any position.
9       And he'll have first-hand knowledge about that.  He'll
10  have knowledge about the department, what it does and what its
11  purpose is, and the fact that they have not contacted Mr.
12  Windom.
13      And that's really the narrow issue about which I'm going
14  to examine him.  I don't expect it will be more than five
15  minutes.  I may ask him a few questions about some preliminary
16  information in terms of introducing himself, who is and what
17  he does and what his job duties.
18      But I'm not going to get into, you know, what do you
19  think about that or what do you think about that.  I'm not
20  going to ask him about his communications with Mr. Toth or
21  anyone from his firm.
22      It's basically company policy, company procedure, and the
23  fact it was not followed in this case in terms of the
24  vocational rehabilitation department and no contact to Mr.
25  Windom.  Because they have made a very big deal out of the

1  alleged failure to mitigate.
2      **THE COURT:** Why haven't they?
3      **MR. LAMPROS:** Because they fired him.
4      **THE COURT:** Well, that's where I was going.
5      **MR. LAMPROS:** And I don't know that that's true.  I had
6  another case with them that was in state court, and we went to
7  mediation, and it had been pending longer than this case, and
8  we went to mediation and they sent him a voc-rehab letter
9  three days before our scheduled mediation.
10     So it may just be something that got by them.  But the
11 long and short of it is, if they had contacted him, they would
12 be parading them in here with letter after letter after letter
13 they sent to him saying, and we offered you all this great
14 rehabilitation services, and you just didn't take advantages
15 of them.  So I think the failure to contact him and offer him
16 that program is relevant to his alleged failure to mitigate.
17     **THE COURT:** You're not going to ask him why?
18     **MR. LAMPROS:** No.
19     **THE COURT:** Simply that that's something that is
20 available, period?
21     **MR. LAMPROS:** That's it.  Like I said, some preliminary
22 stuff to let him know who he is so it's got some context.
23     **THE COURT:** Well, be careful with that preliminary
24 stuff.  There doesn't need to be -- it's not particularly
25 important for the jury to know that he's a claim agent or an

1  adjustor.  I don't know --
2      **MR. LAMPROS:**  I think his title is manager of field
3  investigations.  So I don't think that the word claim is going
4  to come up at all.
5      **THE COURT:**  I mean, there's no reason that he -- at
6  least on direct -- needs to know that he was a claim agent for
7  this case.
8      **MR. LAMPROS:**  And I will call him on cross, and like I
9  said, I don't expect it will take five minutes.
10     **THE COURT:**  Okay.  Like I say, don't -- right now
11 there's no reason to go beyond your main point, which is that
12 the railroad has vocational services available for individual
13 employees.
14     **MR. LAMPROS:**  And, Your Honor, in terms of that, they
15 offer that program to individuals who are injured on the job
16 or individuals who are injured off the job, and I'd like to
17 get into that.  It's not limited to employees who are --
18 simply employees injured on the job.  It's offered if an
19 employee is off duty and has a heart attack.
20     **THE COURT:**  So your cross, he's not going to be
21 testifying at all about Mr. Windom?
22     **MR. LAMPROS:**  Except for the fact that they never
23 offered it.
24     **THE COURT:**  Well, that's the question that
25 potentially --

1     **MR. LAMPROS:**  I can leave that out.  Mr. Windom is
2  going to testify to that.
3     **THE COURT:**  Right.  I think that's the thing to do.  So
4  if things go as planned, he's not going to be talking about
5  Mr. Windom at all.
6     **MR. LAMPROS:**  The --
7     **THE COURT:**  And I'm going to tell Mr. Toth that.  Just
8  that he's not --- none of the questions that you're going to
9  asking him are specifically about Mr. Windom.
10    **MR. LAMPROS:**  At this time.  Now, Your Honor, if they
11 open the door into the termination issue, then I will have to
12 ask him, I will have to broaden it because there were
13 communications to Mr. Birmingham that proceeded the
14 termination.  But I don't think he's going to open that door.
15 I don't see how he's -- well, he's going to have to tip-toe
16 around it.
17    **THE COURT:**  Well, yeah, and we talked about that at the
18 pretrial in other context.  So, Teri, we'll do a -- at some
19 point before -- you're going to get into this in opening, are
20 you?
21    **MR. LAMPROS:**  No.
22    **THE COURT:**  I assuming that's the reason we're doing it
23 ex parte.  At some point before the evidence starts, we'll
24 need to have a bench conference or it's lunch, we can do it
25 back here, letting Mr. Toth know that your initial cross is

1  not going to be specific at all to Mr. Windom.  Now, whether
2  or not anything gets opened up based upon the questions the
3  railroad asks, that's another matter.  But for now you can
4  establish what you told me.
5       **MR. LAMPROS:**  The only other thing is -- I can deal
6  with that with another witness.  That's okay.  I will leave it
7  at that narrow issue.
8       **THE COURT:**  Okay.  All right.
9       **MR. LAMPROS:**  I'd prefer not to give him too much of a
10 hint.
11      **THE COURT:**  Well, you know, I'm not going to tell them
12 the subject matter.  Anything else?
13      **MR. LAMPROS:**  That's all.
14           *(EX PARTE HEARING CONCLUDED)*

_____

*I HEREBY CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER THIS 5th DAY OF NOVEMBER, 2012.*

*s/SALLY L. GRAY, USCR,*
*U.S. DISTRICT COURT-MIDDLE DISTRICT OF GEORGIA*
*E-mail: Sally_Gray@gamd.uscourts.gov*