**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | | |
|---|---|---|
| **PAUL WINDOM,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 5:10-CV-407 (MTT)** |
| | ) | |
| **NORFOLK SOUTHERN RAILWAY** | ) | |
| **COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## ORDER

Before the Court is the Defendant's Motion to Satisfy Judgment on the Jury
Verdict.  (Doc. 89).   The Plaintiff brought suit against the Defendant pursuant to the
Federal Employers' Liability Act (FELA), 45 U.S.C. § 51, *et seq.*   After a jury trial, the
Plaintiff was ultimately awarded $20,000.[1]  The Defendant contends that the Plaintiff's
Judgment should be reduced by: (1) the amount the Defendant will have to reimburse
the Railroad Retirement Board (RRB), (2) Tier I and Tier II[2] deductions and Medicare
contributions on the award for "past wage loss," and (3) payments made to the Plaintiff
pursuant to his Supplemental Sickness Benefits Plan (the Plan).  (Doc. 89-5).  The
Defendant requests the Court rule the Judgment satisfied, because the amount by

---

[1] The jury awarded $200,000, $100,000 for "Net lost wages and benefits to the date of trial," and
$100,000 for "Net lost wages and benefits in the future reduced to present value."  (Doc. 84 at
3).  However, this amount was reduced by the Plaintiff's contributory negligence, resulting in a
net award of $20,000.

[2] The Railroad Retirement Act resembles both a private pension program and a social welfare
plan by providing two tiers of benefits.  *Hisquierdo v. Hisquierdo*, 439 U.S. 572, 573 (1979).  The
upper tier is tied to earnings and career service, while the lower tier corresponds to those an
employee would expect to receive under the Social Security Act.  *Id.*

which the Defendant contends the Judgment should be reduced—$27,046.33—exceeds the actual Judgment.  (Doc. 89 at 9).   The Plaintiff agrees the Judgment should be offset by the amount the Defendant must pay the RRB, $6,233.23.  (Doc. 91 at 1).  For the following reasons, the Motion is **GRANTED** in part and **DENIED** in part.

## A.  The Railroad Retirement Board Reimbursement

Both Parties agree the RRB is entitled to reimbursement by the Defendant in the amount of $6,233.23.  (Doc. 89 at 7; Doc. 91 at 1).  Accordingly, with regard to the RRB benefit amount, the Motion is **GRANTED**, and the Defendant is **ORDERED** to pay $6,233.23 of the Judgment to the RRB.

## B.  Tier I, Tier II, and Medicare Contributions

The Defendant contends that "any jury award for past lost wages is subject to withholding for Tier I and Tier II benefits."[3] (Doc. 89 at 2).   Essentially, the Defendant argues it will have to pay to the RRB the Plaintiff's contributions for Tier I and Tier II benefits when it satisfies the jury's $10,000 past lost wages award.[4]  (Doc. 91 at 2).  The Defendant calculates it will have to pay $810 to the RRB.  (Doc. 89 at 2).

---

[3] The Defendant also seeks a set off of $145 for "Medicare contribution" it says it will have to make when it pays the Judgment.  However, the Defendant cites no authority suggesting that an employer must pay an employee's Medicare contributions when it pays a judgment for net lost wages.  *See e.g.* 26 U.S.C. § 104(a)(2).

[4] How to handle Tier I and Tier II contributions has caused the Parties some angst and has led to some confusion.  The angst is demonstrated by the battles fought by the Parties over the Plaintiff's economist's methodology for treating Tier I and Tier II contributions in the context of net lost wages.  The confusion is illustrated by the Defendant's Request to Charge Number 25 which would have instructed the jury that "Tier I and Tier II taxes must be subtracted from the actual wage loss," without distinguishing between the employer and employee contributions to these "taxes."  (Doc. 74-7 at 41).

The Plaintiff cites *CSX Transportation, Inc. v. Levant*, 200 Ga. App. 856, 410

S.E.2d 299 (1991), rev'd on other grounds by *CSX Transportation, Inc. v. Levant*, 262

Ga. 313, 417 S.E.2d 320 (1992), which considered a similar issue:

> The trial court also refused to admit any evidence relating to the
> amount of railroad retirement taxes withheld from plaintiff's income.
> CSX contends that it should have been allowed to show plaintiff's net
> income as reduced by his railroad retirement taxes.  It is clear that
> CSX sought to mitigate damages by having the jury consider
> plaintiff's payment of railroad retirement taxes.  "'The Railroad
> Retirement Act is substantially a Social Security Act for employees of
> common carriers.... *The benefits received under such a system of
> social legislation are not directly attributable to the contributions of
> the employer so they cannot be considered in mitigation of the
> damages caused by the employer.*'"  *Eichel v. N.Y. Central R. Co.,*
> 375 U.S. 253, 254, (1963) citing *New York, N.H. & C.R. Co. v. Leary,*
> 204 F.2d 461 (1st Cir.1953).  The taxes paid by plaintiff into the
> railroad retirement fund are to fund his future retirement and are paid
> directly to him upon his retirement.  Since the railroad retirement
> taxes would ultimately be paid directly to plaintiff upon his retirement,
> we find no error with the trial court's exclusion of this evidence or
> with the trial court's refusal to instruct the jury that plaintiff's net
> income means gross income minus all taxes including railroad
> retirement taxes.

*Levant*, 200 Ga. App. at 859-60, 410 S.E.2d 299, 303 (emphasis added).

The Defendant contends *Levant* is inapposite because the court was considering

the issue in the context of admissibility at trial rather than in a post-judgment situation.

(Doc 93 at 2).  *Levant* is not directly on point, but not for the reason suggested by the

Defendant.  Properly read, *Levant* recognizes that a FELA plaintiff may recover, as a

part of his net lost wages, the contributions he would have made for Tier I and Tier II

benefits because they are payments by him for his retirement benefits.  This makes

sense; putting aside the issue of whether the employer's contributions for Tier I and Tier

II benefits should reduce the Plaintiff's award, clearly the Plaintiff's own contributions, or

contributions he would have made had he actually earned the wages, should not reduce his recovery. However, *Levant* sets up the situation raised by the Defendant here. Assuming the employee in *Levant* recovered his net lost wages, without reduction for contributions he would have made for Tier I and Tier II benefits for those wages, the Railroad, when it paid that judgment, might be faced with the situation that the Defendant here claims it now faces. When the Railroad paid Levant his award, it, under the Defendant's theory, would have to pay to the RRB both its contributions for Tier I and Tier II benefits for the amount of that lost wages award plus Levant's contributions.

If the Defendant had paid, or even if it could show with some certainty that it would have to pay, the Plaintiff's contributions for Tier I and Tier II benefits, it might have a plausible argument for set off. The problem for the Defendant is that it has not demonstrated that it has been held liable for any such contributions or even that it will be held liable for such contributions.[5] The authorities it cites do not establish its liability and certainly do not establish the amount of its liability. The most apparent flaw in the Defendant's argument is that the Defendant terminated[6] the Plaintiff shortly after his

---

[5] As the Plaintiff notes, the authority the Defendant cites does not stand for the exact theory the Defendant is alleging in this case. For example, *Hance v. Norfolk Southern Railroad Co.*, 571 F.3d 511 (6th Cir. 2009), is factually distinguishable because it involved a Uniform Services Employment and Reemployment Rights Act of 1994 claim, rather than a FELA claim. Further, as a result of the lawsuit Hance was reinstated to his position with the railroad, and the railroad taxes at issue were specifically an "award of substitute retirement benefits" on "back pay award." *Id.* at 523. The court reasoned that Hance would receive retirement credit for the years of service covered by the back pay award, putting him in the position he would have been in had he not been discharged. *Id.* at 523. Thus, the district's award of "substitute retirement benefits" would be clear double recovery because of Hance's reinstatement.

[6] The Court's use of the word terminated is not intended to express its opinion on why the Plaintiff is no longer employed by the Defendant. The Court recognizes that the Defendant describes the Plaintiff's termination as a result of the Plaintiff forfeiting his seniority. The characterization of why or how the Plaintiff was no longer employed by the Defendant after December 2 2010, is not relevant for this action.

injury, and thus all or most of the lost wages award would be for the period after the Plaintiff had been terminated.[7]   The Defendant appears to acknowledge that the RRB will not hold it responsible for any Tier I and Tier II withholdings after the Plaintiff's termination.   (Doc. 89 at 6 n. 9).   In short, the Defendant has not proved that it has suffered or will suffer any liability for contributions for which the Plaintiff should have been liable.   If and when the Defendant incurs such liability, it can then consider its options.[8]   *See Burlington N. RR. Co. v. Strong*, 907 F.2d 707 (7th Cir. 1990) (discussing the previous trial court's decision to require the defendant to obtain a judgment or lien before allowing it to set off supplemental sickness benefits from a FELA judgment).

Accordingly, the Court **DENIES** the Defendant's Motion with regard to Tier I, Tier II, and Medicare contributions.

### C. The Benefits Paid Pursuant to the Plaintiff's Supplemental Sickness Benefits Plan

The Defendant contends the Plaintiff received $19,868.00 in benefits pursuant to a Supplemental Sickness Benefits Plan (the Plan), and that this entire amount should be "withheld from payment made in satisfaction of the Judgment."  (Doc. 89 at 8).   The Plan was issued pursuant to "collective bargaining agreements between railroads represented by the National Carriers' Conference Committee and employees represented by labor organizations."  (Doc. 89-5 at 3).  The Plaintiff contends that FELA

---

[7] Had this particular issue been brought to the Court's attention at trial, perhaps the verdict form could have been broken down further, i.e. to account for net lost wages attributed to the Plaintiff from August 12-December 2, 2010, and those net lost wages attributed to December 2, 2010- the date of trial.

[8] The Court notes the Defendant does cite an IRS Federal Regulation to support its argument that whether the Defendant has to pay the "railroad retirement taxes does not turn on when the award is paid."  (Doc. 93 at 3-4).  Even if applicable, this does not address whether the Defendant will have to pay the "taxes" on the lost wages amount attributed to the time period before the trial, but while the Plaintiff was no longer an employed by the Defendant.

bars any attempts by the Defendant to contract away its liability.   (Doc. 91); *see also* 45 U.S.C. § 55.   Further, the Plaintiff argues that this Plan does not fall into an exception contemplated by § 55 because "there is nothing to indicate that the Supplemental Sickness Benefits were funded by contributions from Defendant itself, either directly or indirectly."  (Doc. 91 at 3).

First, the Court notes that there does not appear to be Eleventh Circuit precedent addressing whether the Defendant is entitled to set off the full amount of benefits the Plaintiff received pursuant to the Supplemental Sickness Benefits Plan.  Courts in other circuits analyze this issue in various ways.   All courts recognize that 45 U.S.C. § 55 generally renders void any contract by which a common carrier exempts itself from liability in an action brought pursuant to FELA.   However, courts recognize a narrow exception:  If a common carrier has contributed or paid to any insurance or relief benefit that may have been paid to the injured employee, the common carrier can set off the amount.  45 U.S.C. § 55.  Therefore, the issue here is whether the Plan falls into this narrow exception.

In some cases, courts have found that benefits funded by employer payments were nonetheless to be treated as collateral source payments, and thus not subject to set off.  *See Hall v. Minnesota Transfer Ry. Co.*, 322 F. Supp. 92, 96 (D. Minn. 1971); *Southern Pac. Tranp. Co. v. Allen*, 525 S.W.2d 300 (Tex. Civ. App. 1975).  Other courts have concluded that set off is appropriate when the benefit plan is funded by the employer and when the supplemental sickness benefit plan or collective bargaining agreement contains language clearly providing benefit payments were not to duplicate amounts received for lost wages from the employer.  *Folkestad v. Burlington, N. Inc.*,

813 F.2d 1377 (9th Cir. 1987); *Burlington N. RR. Co. v. Strong*, 907 F.2d 707 (7th Cir.

1990).   Alternatively, the Fifth Circuit, though not analyzing a FELA judgment, has

reasoned that the mere fact an employer has contributed to a fund from which an

employee receives benefits does not necessarily mean the fund is not a collateral

source.  *Haughton v. Blackships, Inc.*, 462 F.2d 788, 790 (5th Cir. 1972).   Specifically,

*Haughton* held:

> The policy considerations for the collateral source rule are apparent.
> On the one hand, an employer-tortfeasor who voluntarily undertakes
> to indemnify itself against liability by payment into a fund for that
> purpose, should not be penalized by permitting the plaintiff a double
> recovery of his benefits under the fund as well as his full measure of
> damages.  On the other hand, where the employer-tortfeasor makes
> payment directly or indirectly into a fund established for an
> independent reason, or where such payment by the employer should
> be considered in the nature of a fringe benefit or deferred
> compensation, the employer should not be entitled to benefit by
> setting off such income in mitigation of his responsibility as a
> tortfeasor.

*Id.* at 791.  Moreover, some courts have held that when the employee contributes to the

payment of the supplemental sickness benefit plan premium, i.e., through monthly

payroll deduction, then the benefits paid to the employee under that plan cannot be

offset against a judgment, even when the employer "overwhelmingly funded" the plan.

*Kansas City Southern Railway Co. v. Nussbeck*, 135 S.W.3d 874 (Tex. App. 2004).

Though the Defendant has attached a copy of the Supplemental Sickness

Benefit Plan[9], the Collective Bargaining Agreement is not in the record.  Nor has the

Defendant alleged, much less proved, any amount it contributed to the self-funded Plan.

---

[9]  As the Plaintiff points out, there has been no foundation laid for the admission of this
document.  However, the Plan does contain language supporting the Defendant's general
argument.

Further, even if the Court were to assume the Defendant did contribute, the Defendant does not allege in what manner the contributions were made, i.e., through payroll deductions or from a specific corporate fund.  The Defendant simply has not put forth enough evidence for the Court to determine whether the benefits paid pursuant to the Plan meet the exception to 45 U.S.C. § 55.

Moreover, this too is an issue that should have been addressed before trial, or perhaps in a subsequent action.  For example, in *Strong*, after the trial and judgment, the defendant moved the trial court "for a determination that the amount of the judgment ought to be reduced by … the amount paid to [the plaintiff] in [Supplemental Sickness benefits]."  *Strong*, 907 F.2d at 709 (discussing the previous trial court decision).  The trial court had held "'in the absence of a lien or judgment in its favor [the defendant] is not entitled to withhold the sum of … any Supplemental Sickness Benefit paid to [the plaintiff]."  *Id.* (internal citation omitted).  The trial court suggested that the plaintiff may not succeed in keeping the money if the defendant sued on the contract; however, a post-judgment motion was not the appropriate mechanism for the defendant to obtain an offset.  *Id.*  Pursuant to the trial court's order, the defendant then sued on the contract to recover the benefit payments, and the Seventh Circuit ultimately held that the defendant was entitled to set off the full amount of the benefits paid to the plaintiff under the supplemental sickness benefits plan.   While the Court is not necessarily suggesting that filing another action is appropriate, the point is that these issues have to be addressed at the appropriate time and in the appropriate way.

Thus, even if the Defendant had put forth enough evidence for this Court to determine whether the Defendant is entitled to set off the full amount of benefits the

Plaintiff received pursuant to the Supplemental Sickness Benefits Plan, a post-judgment motion is not the proper avenue for the Defendant to obtain the set off.  The Motion is **DENIED** with respect to the benefits paid pursuant to the Supplemental Sickness Benefits Plan.[10]

Accordingly, the Motion is **GRANTED** only with regard to the RRB Reimbursement in the amount of $6,233.33.  The Defendant is **ORDERED** to pay that amount to the RRB and the Plaintiff's Judgment is reduced by the amount.  The remainder of the Motion is **DENIED**.

**SO ORDERED**, this 7th day of December, 2012.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT

---

[10] The Plaintiff also argues that even if the Defendant were entitled to set off the Judgment by this amount, set off would be reduced by Georgia's complete compensation rule and the common-fund doctrine.  Because the Court denies the Defendant's Motion, the Court declines to determine the merits of these arguments.